**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                        Case No. 04-36484

DORIS A. CHRISTENBERRY
d/b/a LITTLE PIGEON ROOST

                   Debtor

**MEMORANDUM ON MOTION TO CONVERT,
MOTIONS TO DISMISS,
AND OBJECTION TO EXEMPTIONS**

**APPEARANCES:**    Doris A. Christenberry
                Post Office Box 1253
                Seymour, Tennessee  37865
                Debtor, *Pro Se*

                GENTRY, TIPTON & McLEMORE, P.C.
                Tyler Huskey, Esq.
                Post Office Box 1990
                Knoxville, Tennessee  37901
                Attorneys for Maurice K. Guinn, Chapter 11 Trustee

                RICHARD F. CLIPPARD, ESQ.
                UNITED STATES TRUSTEE
                Patricia C. Foster, Esq.
                800 Market Street, Suite 114
                Knoxville, Tennessee  37902
                Attorneys for United States Trustee

                R. Deno Cole, Esq.
                Post Office Box 57
                Knoxville, Tennessee  37901-0057
                Creditor, *Pro Se*

                Lorene Perry
                7502 Dick Ford Lane West
                Knoxville, Tennessee  37920
                Creditor, *Pro Se*

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The contested matters before the court are the (1) Objection to Exemptions (Objection) filed by the United States Trustee (U.S. Trustee) on January 20, 2005; (2) Motion to Convert, or in the Alternative, for the Appointment of a Chapter 11 Trustee (Motion to Convert) filed by the U.S. Trustee on January 20, 2005; and (3) the Requests [sic] for Dismissal (Motion to Dismiss) filed by the Debtor on February 10, 2005.

Also before the court are the Response of R. Deno Cole, as Creditor, to Motions to Dismiss or Convert to Chapter 7, Pursuant to 11 U.S.C. §1112 filed on September 14, 2005, the Requests [sic] for Dismissal/and Answer to Claims Register filed by the Debtor on September 19, 2005,[1] and the Response of Lorene Perry, as Creditor, to Motions to Dismiss or Convert to Chapter 7 Pursuant to 11 U.S.C. 1112 filed on September 20, 2005.

The evidentiary hearing on these matters was held on September 28, 2005.  The record before the court consists of eight exhibits introduced into evidence, along with the testimony of the Debtor and R. Deno Cole.  The court also takes judicial notice of relevant undisputed facts and documents derived from the Debtor's bankruptcy court file.  *See* FED. R. EVID. 201.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(A), (O) (West 1993).

---

[1] Although entitled "Requests for Dismissal/and Answer to Claims Register," this document consists of the Debtor's comments on the various claims filed by creditors in her case and does not serve to support or restate averments set forth in her Motion to Dismiss.

# I

The Voluntary Petition commencing this Chapter 11 bankruptcy case was filed by the Debtor, *pro se*, on December 14, 2004. The Debtor filed her Statements and Schedules on December 28 and 29, 2004. The U.S. Trustee filed his Objection on January 20, 2005, stating that the Debtor claimed a $15,000.00 homestead exemption in non-residential rental property located at 4670 Pittman Center, Gatlinburg, Tennessee (Cabin), as well as personal property exemptions totaling $12,000.00, consisting of $4,000.00 for wearing apparel, $4,000.00 for household furnishings, and $4,000.00 for a truck, all in excess of the limits allowed under Tennessee law.[2]

The U.S. Trustee also filed his Motion to Convert on January 20, 2005, asking the court to convert the case to Chapter 7, based upon information gleaned at the Debtor's conference and the meeting of creditors.[3] In particular, the U.S. Trustee was concerned with the Debtor's prospects for employment in the immediate future, issues concerning the Debtor's division of marital assets, issues concerning the Cabin,[4] the inaccuracy and

---

[2] On February 16, 2005, the Debtor filed Amendments to her schedules, but she did not amend Schedule C. In the Debtor's Response to the U.S. Trustee's Motion to Convert, filed on February 9, 2005, the Debtor stated that she was confused about her exemptions but that she did not want them. At the beginning of the trial, the U.S. Trustee, through counsel, stated that the only remaining issue with respect to the Objection was the Debtor's claimed $5,000.00 homestead exemption in the Cabin.

[3] The Motion to Convert also asked the court to appoint a Chapter 11 Trustee. After a hearing on February 17, 2005, the court granted the Motion to the extent that it requested appointment of a trustee, and Maurice K. Guinn was thereafter appointed as Chapter 11 trustee. The conversion issue was adjourned by the court.

[4] These issues have been resolved because the rental cabin in question, consisting of a 1.7-acre tract located in Sevier County, Tennessee, was sold on September 2, 2005, for the purchase price of $226,000.00. After deducting closing costs, property taxes, and expenses, the Chapter 11 Trustee received $212,577.90.
(continued...)

incompleteness of the Debtor's statements and schedules, the Debtor's misunderstanding of bankruptcy law and the bankruptcy process, and the Debtor's inability to reorganize outside a liquidation of her assets.

The Debtor, on February 9, 2005, filed her Answer to Motion to Convert, or in the Alternative, for the Appointment of a Chapter 11 Trustee, in opposition to the Motion to Convert, arguing that she filed the Chapter 11 case in a state of emergency.  The Debtor acknowledged her lack of understanding with respect to bankruptcy and Chapter 11, specifically, but she also argued that she had many prospects for employment, that it would be abusive to force her to liquidate her property, and that she unintentionally filed inaccurate statements and schedules.  Additionally, the Debtor averred that she is a farmer, and thus, her case cannot be converted to Chapter 7 except upon her request.[5]  Instead of conversion, the Debtor sought dismissal, arguing that it would be in her and her creditors' best interests, and along those lines, she filed the Motion to Dismiss.

Mr. Cole and Ms. Perry filed their Responses to the Motion to Convert and the Motion to Dismiss, both taking the position of the U.S. Trustee and requesting that the court convert the case to Chapter 7 rather than dismiss it.  Both creditors argue that the Debtor has

---

[4](...continued)
From this amount, he paid the lien of Sara Belden in the amount of $190,849.11.  The Chapter 11 Trustee is currently holding the remaining $21,728.79.

[5] Pursuant to 11 U.S.C.A. § 1112(c) (West 2004), "[t]he court may not convert a case under . . . chapter [11] to a case under chapter 7 . . . if the debtor is a farmer[.]"  Nothing in the present record or in the record of any other hearing held before the court during the pendency of this bankruptcy case substantiates the Debtor's statement that she is a "farmer" as that term is defined at 11 U.S.C.A. § 101(20) (West 2004).

substantial unencumbered assets that should be administered by a Chapter 7 trustee, who would be in the position to satisfy claims in their entirety. Their concern with dismissal centers around the fact that many of the Debtor's assets are located outside the State of Tennessee and could easily be dissipated without creditors receiving any payments.

## II

The court is authorized to convert a case filed under Chapter 11 to Chapter 7, or to dismiss the case for "cause" as set forth in 11 U.S.C.A. § 1112(b), which provides, in material part, that "on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause." 11 U.S.C.A. § 1112(b) (West 2004). Section 1112(b) does not offer an exhaustive list of the factors necessary for a finding of cause, and the determination of whether to convert or dismiss is within the sound discretion of the court, based upon the facts and circumstances of each individual case. *In re W. Pac. Airlines, Inc.*, 218 B.R. 590, 593-94 (Bankr. D. Colo. 1998); *In re Fed. Roofing Co., Inc.*, 205 B.R. 638, 641 (Bankr. N.D. Ala. 1996); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 790 (Bankr. W.D. Tenn. 1992). Additionally, proof of any one statutory factor supporting conversion or dismissal sufficiently justifies relief. *Fed. Roofing*, 205 B.R. at 641; *In re Route 202 Corp.*, 37 B.R. 367, 372 (Bankr. E.D. Pa. 1984).

Motions filed under § 1112(b) "invoke[] a two-step analysis, first to determine whether 'cause' exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in 'the best interest of creditors and the estate.'" *Rolex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) (quoting *In re Mech. Maint., Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991)). The party seeking conversion or dismissal bears the burden of proof by a preponderance of the evidence. *In re 4 C Solutions, Inc.*, 289 B.R. 354, 364 (Bankr. C.D. Ill. 2003). In this case, the Debtor requests dismissal of her Chapter 11 case pursuant to § 1112(b), while the U.S. Trustee and two creditors seek conversion. Accordingly, the court must first determine whether "cause" exists to support either dismissal or conversion, and if so, which is in the best interests of creditors and the estate.

## A

The U.S. Trustee relies upon the following causal factors set forth in § 1112(b):

(b) . . .

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan; [or]

(3) unreasonable delay by the debtor that is prejudicial to creditors[.]

11 U.S.C.A. § 1112(b). Each of these factors involves a similar inquiry and is somewhat interrelated. For the reasons set forth below, the court finds that the U.S. Trustee has

proved, by a preponderance of the evidence, the existence of each of these factors, and therefore, that cause exists to either convert or dismiss the Debtor's bankruptcy case.

The first of the causal factors asserted by the U.S. Trustee is the "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation," which contemplates a "two-fold" inquiry.  11 U.S.C.A. § 1112(b)(1); *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994).  If the court first determines that the estate has actually decreased in value, it must then ascertain if a reasonable likelihood of rehabilitation exists.  *In re V Cos.*, 274 B.R. 721, 725-26 (Bankr. N.D. Ohio 2002).  In the context of § 1112(b), rehabilitation means "to put back in good condition; re-establish on a firm, sound basis."  *In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1112.03(2) at 14 (15th ed. 1980)).

Rehabilitation also requires the Debtor to show that she has cash flow sufficient to satisfy her obligations and to propose a feasible plan, which must be based on more than speculation.  *In re Schriock Constr., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994); *see also In re Frost*, 37 B.R. 49, 51-52 (Bankr. M.D. Tenn. 1984) (basing plan estimations on highly questionable data that was not corroborated or confirmed by independent sources was mere speculation and did not support a reasonable likelihood of rehabilitation).  Additionally, a feasible plan must be workable, offering a reasonable prospect of success.  *In re Holiday Assocs. Ltd. P'ship*, 139 B.R. 711, 716 (Bankr. S.D. Iowa 1992).  Debtors will generally be given the benefit of the doubt that a plan is feasible if it is supported by reasonable

7

projections based upon current economic conditions. *Prudential Ins. Co. of Am. v. Monnier (In re Monnier)*, 755 F.2d 1336, 1341 (8th Cir. 1985).

The U.S. Trustee also argues that conversion is proper pursuant to § 1112(b)(2) because the Debtor is unable to effectuate a plan. Courts generally characterize this subsection as meaning "that the debtor lacks the ability to formulate a [confirmable] plan or carry one out." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992). "A debtor's failure to propose a confirmable plan or the bankruptcy court's denial of confirmation constitutes cause under section 1112(b)(2)." *Sunflower Racing, Inc. v. Mid-Continent Racing & Gaming Co. I (In re Sunflower Racing, Inc.)*, 226 B.R. 665, 669 (D. Kan. 1998).

A primary consideration under this subsection is the debtor's stability. *Tirey Distrib. Co. v. Sloan (In re Tirey Distrib. Co.)*, 242 B.R. 717, 723 (Bankr. E.D. Okla. 1999). If the debtor's business appears to be "too unstable to support a consistent payment string under the plan, 'cause' may exist to convert or dismiss the case." *Tirey Distrib.*, 242 B.R. at 723 (quoting 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[5][B] (Lawrence P. King ed., 15th ed. rev. 1999)); *In re Halpern*, 229 B.R. 67, 73 (Bankr. E.D.N.Y. 1999) ("A lack of assets makes an effective plan of rehabilitation unlikely"). Debtors should be allowed a reasonable opportunity to present a confirmable plan of reorganization prior to conversion or dismissal, but there is no specific period of time that a court must wait when it is obvious that an

8

effective reorganization is not possible. *In re Midwest Commc'ns, Inc.*, 269 B.R. 40, 43 (Bankr. N.D. Iowa 2001); *In re Powell Bros. Ice Co.*, 37 B.R. 104, 106 (Bankr. D. Kan. 1984).

As his final basis in support of his argument that cause exists to convert, the U.S. Trustee argues that allowing the Debtor's case to be dismissed or to proceed under Chapter 11 would cause an "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C.A. § 1112(b)(3). The court has a great deal of discretion in determining what constitutes an unreasonable delay, but it includes a debtor's failure to provide meaningful information at any stage of the proceeding. *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994); *V Cos.*, 274 B.R. at 725 (finding unreasonable delay based upon failure to provide meaningful financial information for two years, filing of materially inaccurate operating reports, and failure to meet their fiduciary obligations).

In support of his Motion to Convert, the U.S. Trustee makes the following arguments. First, he argues that while the Debtor's monthly operating reports show a very modest income related to the rent that the Debtor receives, she has not reported post-petition liabilities, so he cannot ascertain whether the Debtor's liabilities are increasing. Second, with respect to her ability to reorganize, as well as her ability to effectuate a plan, the U.S. Trustee is concerned with the Debtor's income prospects. Third, the U.S. Trustee argues that the Debtor has not actually filed a plan and disclosure statement, that the exclusivity period has expired, and that the Debtor cannot support a plan, due again, to her employment and income issues. Fourth, the U.S. Trustee argues that the Debtor's failure to file her monthly operating reports with the court, even though she submitted them to the

9

U.S. Trustee's office in a somewhat timely manner, evidences her inability to effectuate a

plan, as well as constitutes unreasonable delay and prejudice to creditors. Additionally, Mr.

Cole and Ms. Perry have argued that if the Debtor's case is dismissed, she may dissipate her

assets, wherein creditors, including themselves, would not be paid in full.

With respect to her income and employment issues, the Debtor testified that she has

procured a one-year contract for employment with Oakmont School in Knox County. Her

employment began in August, and she receives a gross salary of $450.00 per week, plus she

provides some tutoring assistance for additional income. The Debtor also testified that she

recently signed a contract to sell timber, and although it is short-term and will end, she has

received payments totaling approximately $3,600.00 from this contract since January 2005.

The Debtor also testified that while she no longer receives rental income from the Cabin,

she does receive rental income from her mother's home, located at 8717 Trout Road,

Knoxville, Tennessee, and in fact, based upon her monthly operating reports, the Debtor has

received $550.00 per month for rent from February through August 2005. *See* COLL. TRIAL

EX. 4. In short, the Debtor anticipated that she expects to be receiving income

approximating $2,000.00 monthly, exclusive of the timber income.

The Debtor testified that she has explored the possibility of obtaining a line of credit

on her home in order to pay her creditors in the event her case is dismissed, but she cannot

obtain any financing while she is in bankruptcy. Additionally, the Debtor testified that

during the pendency of her bankruptcy case, she has paid some of her pre-petition debts,

albeit without court approval, and thus, her overall liabilities have decreased rather than

increased.   The Debtor's monthly operating reports evidence that the Debtor made the

following payments post-petition, which she acknowledged at trial:   (1) $89.76 to TVA

Employees Credit Union on April 12, 2005, for interest on a certificate of deposit loan; (2)

$89.76 to TVA Employees Credit Union on May 19, 2005, for interest on a certificate of

deposit loan; (3) $125.32 to First Interstate Bank on June 1, 2005, for interest on a

certificate of deposit loan; (4) $100.00 to First Interstate Bank on August 26, 2005, for a

certificate of deposit loan; and (5) $152.68 to Citizens National Bank on August 29, 2005,

for a certificate of deposit loan.  *See* COLL. TRIAL EX. 4.   The Debtor also testified that she has

paid about one-half of the unsecured nonpriority pre-petition debt she owes Security

Financial, which filed a claim in the amount of $857.38.

Based upon the evidence presented, the court agrees that cause exists to either

convert or dismiss the Debtor's bankruptcy case.   Primarily, the court does not believe that

the Debtor can effectuate a plan.   Based upon her Amended Schedule J, filed on

February 16, 2005, and her monthly operating reports, the Debtor's monthly expenses are

roughly $1,700.00[6]; however, these expenses are extremely modest and quite possibly

underestimated.  *See* Coll. TRIAL EX. 4; COLL. TRIAL EX. 5.   During this same time period, the

Debtor's average monthly income according to her monthly operating reports was $850.00.[7]

---

[6] To arrive at this figure, the court averaged the Debtor's personal expenses listing in her monthly
operating reports and on her Amended Schedule J.

[7] This figure does not include the following payments that the Debtor received pursuant to her timber
contract:  (1) $3,000.00 in January 2005; (2) $1,794.18 in August 2005; and (3) $1,906.76 in August 2005.
*See* COLL. TRIAL EX. 4.

*See* COLL. TRIAL EX. 4.  Additionally, the Debtor testified that during the pendency of her bankruptcy case, she borrowed money from family members to live on.

With respect to her current income and her ability to pay her creditors, the Debtor's gross income under her employment contract with Oakmont School is $450.00 per week. She also receives $550.00 per month from the rental of her mother's home.[8]  Even though she has the possibility of other income, from her timber contract and tutoring, such income is speculative and irregular.  Therefore, the Debtor's anticipated $2,000.00 per month is a reasonable estimate of her average monthly income.  However, as previously noted, the Debtor's extremely modest monthly expenses are approximately $1,700.00, which include no payments to her unsecured creditors.  Clearly, $300.00 per month is not sufficient to effectuate a Chapter 11 plan of reorganization.

Additionally, even though the Debtor has been in bankruptcy for more than ten months, she has not followed the requirements of Chapter 11, nor has she proposed a confirmable plan of reorganization.  On April 6, 2005, the Debtor filed a document entitled "Plan for Reorganization and/or Dismissal," which lists thirteen creditors and the Debtor's proposed treatment for handling their respective debts.  *See* TRIAL EX. 3.  However, at trial, the Debtor acknowledged that this document is not actually a Chapter 11 plan, but instead, is a request for dismissal of her bankruptcy case.  The Bankruptcy Code requires each plan

---

[8] The Debtor owns a one-third interest in her mother's home, and her sisters own the other two-thirds interest.  The Debtor testified that, at some point in the future, she will repay her sisters their share of this rental income.

to contain certain contents and provisions, such as the designation of classes, the treatment of claims, and an adequate means of implementation, among others. *See* 11 U.S.C.A. § 1123 (West 2004). It also requires the filing of a disclosure statement, setting forth "adequate information" so that creditors can make an educated acceptance or rejection of the plan. *See* 11 U.S.C.A. § 1125 (West 2004). The Debtor's "Plan" does not contain the statutory requirements, and she did not file a disclosure statement. As such, the court agrees that the Debtor has not actually filed a plan of reorganization, nor does she have any intention of doing so.[9] These failures constitute cause under § 1112(b)(2), as does the Debtor's failure to file her monthly operating reports with the Clerk, as required, and as she certified in the copies submitted to the U.S. Trustee's office.

As previously stated, the Debtor's failure to file a plan and disclosure statement and to follow Chapter 11 procedures, combined with her inability to effectuate a confirmable plan, is cause to convert or dismiss. The court must now determine which is in the best interest of the Debtor's creditors.

**B**

This inquiry requires the court to consider the totality of the circumstances, to "compare the creditors' rights in a Chapter 7 bankruptcy to the rights they would have under state law upon dismissal," and to remember "the policy of equality among creditors, fundamental to the bankruptcy law." *V Cos.*, 274 B.R. at 740 (quoting *Superior Siding &*

---

[9] The Debtor testified that the only plan she has is a "plan for dismissing all of my debt."

*Window, Inc.*, 14 F.3d at 243); *Great Am. Pyramid*, 144 B.R. at 792-93.  If there is no

continued activity generating revenue, courts predominately favor conversion over dismissal

because the powers of a Chapter 7 trustee to recover property are generally greater than

powers available outside of bankruptcy, preserving preference actions, and allowing greater

distribution to creditors.  *In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re*

*ABEPP Acquisition Corp.*, 191 B.R. 365, 369 (Bankr. N.D. Ohio 1996); *see also V Cos.*, 274

B.R. at 740; *Citi-Toledo Partners*, 170 B.R. at 609.

At trial, the Debtor stated that she filed her Chapter 11 bankruptcy case in order to

remedy a title problem with respect to the Cabin, which also had a balloon loan payment

due.  Foreclosure proceedings had not been commenced against the property, but the

Debtor believed foreclosure was imminent.  Through the course of her Chapter 11 case, the

Debtor resolved the title issue and sold the Cabin, thus, as she stated on several occasions

during the trial, accomplishing her purposes for being in bankruptcy.  For that reason, the

Debtor adamantly reiterated her desire to have her bankruptcy case dismissed.  If the focus

of § 1112(b) were the Debtor's interests, the court might agree that her reasons for filing

have been resolved.  However, the focus upon which the court must concentrate is the best

interests of creditors and the estate, and based upon the evidence presented concerning the

assets held by the Debtor compared to the debts owed, the court finds that conversion best

favors the Debtor's creditors.

In her Schedule A filed on December 28, 2004, as amended on February 16, 2005,

the Debtor listed the following real property that she actually owns:  (1) forty acres in

14

Bozeman, Montana, valued at $280,000.00, and subject to a secured claim of $130,000.00;

(2) her residence located at 1326 Tittsworth, Seymour, Tennessee, valued at $350,000.00,

which is unencumbered; and (3) a one-third interest in her mother's house located at 8717

Trout Road, Knoxville, Tennessee.[10]  *See* COLL. TRIAL EX. 2; COLL. TRIAL EX. 5.  With respect

to the value of these properties, the Debtor testified that she based her $280,000.00

valuation of the Montana acreage upon the recent sale of adjacent property.  She also

testified that she believes the current market value of her residence, a 4800 square foot

house with five bedrooms, two and one-half bathrooms, and approximately 1.9 acres of

land, is actually $400,000.00.  Finally, the Debtor testified that the total value of her

mother's home is approximately $80,000.00, with the value of her one-third interest just

over $25,000.00.  In all, the Debtor acknowledges that she owns real property with equity

of approximately $575,000.00.  Additionally, the Chapter 11 Trustee is currently holding

$21,728.79, the balance of the proceeds from the sale of the Cabin, which is available for

distribution to the Debtor's creditors.

The Debtor also listed, in her Schedule B, various certificates of deposit held at three

separate lending institutions:  (1) four located at Citizens National Bank, with an aggregate

value of $22,000.00; (2) one located at First Interstate Bank in the amount of $10,000.00;

and (3) one in the amount of $2,000.00 located at TVA Employees Credit Union.  *See* COLL.

---

[10] The Debtor's Schedule A listed the Cabin, which was sold to her daughter, with court approval, on September 2, 2005.  The Debtor also listed other properties that were awarded to her former husband in their divorce.  At the time she filed her bankruptcy petition, the divorce court's order was on appeal to the Tennessee Court of Appeals.  In July, the Court of Appeals affirmed the trial court's award of several properties to the Debtor's former spouse, and thus, those properties were never, in fact, part of the Debtor's estate.

TRIAL EX. 2.  At trial, the Debtor stated that all of the certificates of deposit have loans against them, but she estimated that she had equity in the amount of $3,000.00 in those located at Citizens National Bank, equity of between $2,000.00 and $3,000.00 in the certificate of deposit held at First Interstate Bank, and equity of approximately $1,000.00 in the one located at TVA Employees Credit Union.  Additionally, the Debtor acknowledges that, although she does not want to, she has the right and ability to cash out all of her certificates of deposit.

At trial, the U.S. Trustee also questioned the Debtor about the following personal properties listed in her Schedule B:  (1) support from her former spouse in the amount of $1,000.00 per month for twenty-four months; (2) a paid-up life insurance policy worth $10,000.00; (3) a property damage lawsuit against David Salinsky valued at $70,000.00; (4) a 2000 Toyota Tundra valued at $20,000.00; and (5) farming and office equipment valued at $14,000.00.  *See* COLL. TRIAL EX. 2.  With respect to the support awarded her, the Debtor testified that she has not received any money from her former husband.  She also stated, with respect to the life insurance policy, that she does not know if she has it.  Similarly, with respect to the office and farming equipment, the Debtor testified that she does not know where it is located, as it was awarded to her ex-husband in their divorce.  When questioned about the lawsuit, the Debtor stated that it has been filed, but she is looking for an attorney to represent her.  Finally, the Debtor testified that she bought the Toyota Tundra for $23,000.00 in 2000, and thinks that she could get about $17,000.00 for it now, although it has approximately 44,000 miles on it.  In sum, the Debtor's equity in her

16

real and personal property, combined with the proceeds being held by the Chapter 11

Trustee, is approximately $690,228.79.

As for her debts, the Debtor listed in her schedules eight unsecured nonpriority

creditors with a total of $23,280.00 in claims on her Schedule F, along with four unsecured

priority creditors with a total of $3,998.00 in claims on her Schedule E, and seven secured

creditors with a total of $892,000.00 in claims on her Schedule D.[11]  *See* COLL. TRIAL EX. 2.

At trial, the U.S. Trustee introduced into evidence the claims register for the Debtor's case,

current as of September 27, 2005, which shows that twenty-two claims have been filed.

TRIAL EX. 6.  The summary evidences $266,203.26 in total claims, of which $2,162.00 are

unsecured nonpriority debts, $1,720.07 are unsecured priority debts, and $262,321.19 are

listed as unknown.  TRIAL EX. 6.  A comparison of the Debtor's schedules and the claims

register shows that not all of the Debtor's creditors filed claims.  *See* COLL. TRIAL EX. 2; TRIAL

EX. 6.[12]  At trial, the Debtor acknowledged that some of the debts have been paid without

court approval during the course of her bankruptcy case and through the sale of the Cabin,

---

[11] Included within those secured creditors listed on Schedule D were a $500,000.00 mortgage held by Citizens National Bank on a golf course awarded to the Debtor's ex-husband in their divorce and a $40,000.00 mortgage held by Union Planters Bank against a rental house also awarded to the Debtor's former spouse in their divorce.  There was no evidence presented to indicate that the Debtor has been released from these two mortgages; however, Citizens National Bank, listed as the mortgage holder on the golf course mortgage, did not file a claim for this debt, even though it filed claims for the loans made against the Debtor's certificates of deposit.  On the other hand, because there is nothing to indicate otherwise, the court must presume that the Debtor is still jointly liable with her former spouse for the Union Planters Bank mortgage.  The Debtor also listed a $174,000.00 lien against the Cabin, which was fully satisfied when it was sold in September 2005.

[12] In a Chapter 11 case, if a creditor is not scheduled as "disputed, contingent, or unliquidated[, it] shall not be necessary . . . to file a proof of claim[.]"  FED. R. BANKR. P. 3003(b)(1).  The Debtor did not schedule any of her creditors as holding disputed, contingent, or unliquidated claims.  *See* COLL. TRIAL EX. 2.

and she disputed the amounts of other claims.  Nevertheless, taking all of those issues into consideration, the Debtor's pre-petition debts approximate $247,150.00.

In addition to the pre-petition debts, applications for compensation have been filed by the following professionals:  (1) Mr. Guinn, the Chapter 11 Trustee, for $6,000.00; (2) Gentry, Tipton & McLemore, P.C., counsel for the Chapter 11 Trustee, for $3,957.35; and (3) Mr. Cole, special counsel for the Debtor, for $5,726.01.  *See* COLL. TRIAL EX. 8.  Finally, the Debtor owes fees to the U.S. Trustee of approximately $1,500.00.  Accordingly, the Debtor's pre-petition and post-petition liabilities total approximately $264,333.36.

The Debtor's assets are sufficient to fully satisfy all of her creditors.  The $21,728.79 being held by the Chapter 11 Trustee will pay all of the Debtor's administrative expenses of $17,183.36.    Moreover,  the  Debtor's  residence,  worth  $400,000.00  is  entirely unencumbered, she has land in Montana with approximately $150,000.00 in equity, and she holds certificates of deposit worth approximately $6,500.00 that could easily be cashed out to pay her creditors.  Based upon the possible 100% distribution to creditors in a Chapter 7, this evidence falls in favor of conversion.

Of course, at trial, the Debtor expressed her desire to have her bankruptcy case dismissed rather than converted so that she could deal with her creditors on her own; however, the Debtor also reiterated her desire not to liquidate any of her property, and she evidenced a clear misunderstanding of her responsibilities to her remaining creditors.  First, the Debtor testified that she was willing, and would be able once she was out of bankruptcy,

to obtain a small loan on her residence, in order to pay Mr. Cole and Ms. Perry's unsecured claims. On the other hand, she did not express a desire to pay her other unsecured debts through those funds, nor did she readily acknowledge that she had other debts. In fact, on more than one occasion, the Debtor stated that she had "no debts" other than those of Mr. Cole and Ms. Perry. Even though the Debtor's other creditors did not actively participate in the various motions for conversion or dismissal, they remain her creditors, and their debts are still outstanding. Their lack of participation in this aspect of the Debtor's bankruptcy case does not extinguish her liability to them. Moreover, the Debtor voluntarily availed herself of the protections of the Bankruptcy Code. Her creditors cannot be unduly stripped of the protections provided them through the Code simply because the Debtor has achieved her goals for filing.

Additionally, although the Debtor stated vehemently that she did not want to sell her home, and she did not want to cash in her certificates of deposit, she affirmed her desire to deal with her creditors. The court sees two primary problems, however, with these "plans" by the Debtor. Initially, as previously pointed out, the Debtor has no real leeway in her budget to support payments of any kind to her creditors. Her monthly income of approximately $2,000.00 barely covers her monthly expenses of approximately $1,700.00. Although she testified that it was her intention to obtain a loan against her home to pay creditors, the Debtor offered no evidence that she actually could obtain a loan. Furthermore, it is somewhat disingenuous for the court to condone a plan in which the Debtor, who can barely make ends meet on a monthly basis although living a very modest

19

lifestyle, takes out additional loans to pay off debts that she is not currently paying.  There is no wiggle room in her budget to pay the debts she currently has, and thus, it cannot be presumed that the Debtor can actually make payments on a loan.

Second, on September 19, 2005, the Debtor filed her "Requests for Dismissal/and Answer to Claims Registry," which, in actuality, was her evaluation of the status of the claims listed in her claims register.[13]  *See* TRIAL EX. 7.   In this document, the Debtor expressed her desired treatment for payment of various claims and her disputes with others. Several times during her testimony at trial, the Debtor stated that she wanted the Chapter 11 Trustee to review her claims and figure out the proper amounts owed so that she could then work with her creditors to pay them off.  She did not seem to understand the role of the Chapter 11 Trustee, much less that this request would take a substantial amount of time on the Chapter 11 Trustee's part, instead, stating that she only wanted him to "take a few minutes" to review the documents and tell her what to do.  The Debtor also testified that she does not want the $21,000.00 that the Chapter 11 Trustee is holding to be used for payment on debts that she could pay herself once all of the disputes were resolved.

The fact that the Debtor has not, up to this point, been able to deal with her creditors is evident and further buttressed by her request that the Chapter 11 Trustee  "review" her financial documents and arrive at the proper amounts for her to pay.  The court believes that it is in the best interest of creditors for the Debtor's case to be converted so that a

---

[13] *See supra* n.1.

Chapter 7 trustee, who has the experience and knowledge necessary, can carefully examine all of the claims to determine if objections should be filed and then do so if necessary. In this area, conversion is in the best interest of both creditors and the Debtor. Although the Debtor does not believe that she needs the protections of the Bankruptcy Code, with respect to dealing with her creditors, the court disagrees.

In summary, based upon the evidence presented, the court finds that it is in the best interests of creditors to convert the Debtor's case to Chapter 7 and, accordingly, will grant the U.S. Trustee's Motion to Convert.

### III

The court also finds that the U.S. Trustee's Objection to the Debtor's claimed homestead exemption in the Cabin is well-taken and shall be sustained. In her Schedule C, the Debtor claimed a $5,000.00 exemption in the Cabin, citing Tennessee Code Annotated section 26-2-301 as her authority to do so. *See* COLL. TRIAL EX. 2. This section, which is Tennessee's homestead exemption statute, provides, in material part, that "[a]n individual, whether a head of family or not, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by the individual . . . as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000)[.]" TENN. CODE ANN. § 26-2-301(a) (2000).

The plain language of the statute provides that in order to be entitled to a homestead exemption in real property, the real property must be used as a principal place of residence.

21

At trial, the Debtor acknowledged that she has resided at her current residence at 1326 Tittsworth Road, Seymour, Tennessee, for more than twenty years, and that the Cabin was never her residence, but was always a rental cabin.  Accordingly, the Debtor cannot take a homestead exemption in the Cabin.  Since she did not claim it with respect to her residence, the Debtor is not entitled to a homestead exemption.

An order consistent with this Memorandum will be entered.

FILED:  October 5, 2005

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE